UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHEILA DENISE WEBB,

                                        Plaintiff,

                    -vs-                                              13-CV-326-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

_____

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (JAYA ANN SHURTLIFF,
ESQ., of Counsel), Amherst, New York, for Plaintiff.

WILLIAM J. HOCHUL, JR., United States Attorney (MARY K.
ROACH, Assistant United States Attorney, of Counsel), Buffalo, New
York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated April 16, 2014.  Item

26.

Plaintiff Sheila Denise Webb initiated this action on April 2, 2013, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), to review the final determination of the

Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social

Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits,

as provided for in Titles II and XVI of the Act.   Both parties have moved for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  *See* Items

13, 21.  For the following reasons, plaintiff's motion is denied, and the Commissioner's

motion is granted.

# BACKGROUND

Plaintiff was born on September 12, 1959 (Tr. 208).[1]  She filed an application for both SSDI and SSI benefits in March 2009, alleging disability due to overall body pain, anxiety, and depression, with an onset date of January 1, 2007 (Tr. 193-97).  The applications were denied administratively (Tr. 129-148), and plaintiff requested a hearing which took place by video conference before Administrative Law Judge ("ALJ") Stanley K. Chin on March 31, 2011 (Tr. 83-112).  Plaintiff testified, and was represented at the hearing by attorney Melissa Pezzino.  Vocational expert ("VE") James R. Newton testified by teleconference.

In a decision issued on April 29, 2011, ALJ Chin found that plaintiff was not disabled within the meaning of the Act (Tr. 28-40).  Following the sequential process for evaluating disability claims outlined in the Social Security Regulations at 20 C.F.R. § 416.920(a), the ALJ determined that plaintiff's mental and physical impairments (including bipolar disorder, adjustment disorder, substance abuse, bilateral hand and foot pain, and status post right shoulder injury), while "severe," did not meet or equal the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ found no matching section of the Listings under which to assess the relative severity of plaintiff's physical impairments, and found that plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listing 12.04 (Affective Disorders) (Tr. 33-34).  The ALJ found that the evidence in the record, including plaintiff's testimony and statements regarding the limiting effect of her symptoms and the reports and

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 7).

opinions of consultative and treating medical sources, demonstrated that plaintiff had the residual functional capacity ("RFC") to perform "light work"[2] limited to lifting up to 20 pounds occasionally, and up to 10 pounds frequently; standing/walking about 6 hours and sitting for 6 hours in an 8-hour day, with normal breaks; performing simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements; and involving only simple work-related decisions and routine workplace changes (Tr. 35).  Considering her age, education, work experience, and RFC, and based in part upon the VE's testimony, the ALJ determined that although plaintiff was unable to return to any of her past relevant work, there were jobs in significant numbers in the national economy that she could perform (Tr. 39).

The Appeals Council denied review on February 5, 2013, making the ALJ's decision the final decision of the Commissioner (Tr. 1-4).  This action followed.

In her motion for judgment on the pleadings, plaintiff seeks reversal of the Commissioner's determination and remand for further proceedings, based on the grounds that the ALJ did not adequately consider the impact of plaintiff's speech impediment; failed to properly assess plaintiff's mental RFC; and improperly accorded "great weight" to the

---

[2]As defined in the Regulations:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

vague opinion of Robert Hill, Ph.D., the psychiatric consultative examiner.   These contentions are addressed in the discussion that follows.

## DISCUSSION

I.    **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the Regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations...."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir.1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a) (SSDI), 416.905(a) (SSI).  As indicated above, the Regulations set forth a five-step process to be followed when a disability claim

comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.§§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities...."  20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the

applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, ALJ Chin found at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful employment activity since January 1, 2007, the alleged onset date (Tr. 33). At step two, as indicated above, the ALJ found the evidence in the record sufficient to establish that plaintiff's mental and physical impairments were "severe" within the meaning of the Regulations (*id.*).

At step three, the ALJ determined that plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listing 12.04, dealing with Affective Disorders (Tr. 34-35). To satisfy the criteria of this Listing, the claimant must show (among other things) that his or her mental impairment results in at least two of the following:

1.    Marked restriction of activities of daily living;

2.      Marked difficulties in maintaining social functioning;

3.      Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);

4.      Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B) (Paragraph "B" criteria).  A claimant can also satisfy the criteria of this Listing by presenting a medically documented history of a chronic affective disorder of at least two years' duration, and one of the following:

1)      Repeated episodes of decompensation, each of extended duration;

2)      A residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause the individual to decompensate;

3)      History of one or more years' inability to function outside a highly supportive living arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C) (Paragraph "C" criteria).

With regard to the Paragraph "B" criteria, ALJ Chin found that plaintiff had mild restriction in the activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration, persistence or pace; and no episodes of decompensation of extended duration (Tr. 34-35).   The ALJ found no evidence to establish the presence of any of the Paragraph "C" criteria (*id.*).   Accordingly, the ALJ determined that plaintiff's mental impairments did not meet or equal the severity of Listing 12.04.

As discussed, the ALJ then determined that plaintiff had the RFC for light work with certain exertional and nonexertional limitations (Tr. 35).   In making this assessment, the

ALJ noted plaintiff's allegations of disabling body pain, depression, and anxiety, and that plaintiff's medically determinable impairments could reasonably be expected to cause these symptoms.  However, the ALJ determined that the evidence in the record did not support plaintiff's allegations with respect to the intensity, persistence, and limiting effects of her mental impairments.  The ALJ accorded "great weight" to the opinion of Dr. Hill, a psychologist who conducted a consultative psychiatric examination of plaintiff in October 2009 and found her to be capable of performing "simple work" despite difficulties caused by symptoms of anxiety, depression, lack of motivation, or "substance abuse, should she relapse" (Tr. 37).  The ALJ also relied on the VE's testimony that an individual of plaintiff's age with similar education, work experience, and RFC would be able to make a successful adjustment to work that exists in significant numbers in the national economy (Tr. 38-39).  Using the grids as a framework for decisionmaking, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act (Tr. 39-40).

## IV.    Plaintiff's Motion

Plaintiff contends that the Commissioner's determination should be reversed, and the case remanded for further consideration, because the ALJ did not adequately consider the impact of plaintiff's "significant stutter" as either a severe or non-severe impairment at step two of the sequential evaluation.  Item 13-1, p. 8.  As this court has recognized, a severe speech impediment can be "a real impairment that limits claimant's employment opportunities to the rare job which requires no regular, responsive communication." *Antonetti v. Barnhart*, 399 F. Supp. 2d 199, 202 (W.D.N.Y. 2005) (quoting *Jones v. Barnhart*, 335 F.3d 697, 701 (8th Cir. 2003)).  However, any claimed error at step two of

the analysis in this case must be considered harmless, since the ALJ found other severe mental and physical impairments (*i.e.*, bipolar disorder, adjustment disorder, substance abuse, bilateral hand and foot pain, and status post right shoulder injury), and considered the combined effect of these impairments, "so that [plaintiff]'s claim proceeded through the sequential evaluation process." *Stanton v. Astrue*, 370 F. App'x 231, 233 n. 1 (2d Cir. 2010); *see also Kemp v. Comm'r of Soc. Sec.,* 2011 WL 3876526, at *8 (N.D.N.Y. Aug.11, 2011), *Report and Recommendation adopted by,* 2011 WL 3876419 (N.D.N.Y. Aug. 31, 2011).

Citing *Antonetti*, plaintiff also contends that the failure to consider the impact of plaintiff's stutter adversely affected the ALJ's assessment of Listing severity at step three, as well as his assessment of RFC at step four.  In *Antonetti*, the ALJ determined that the claimant's speech impediment and mild mental retardation were "severe" within the meaning of the Regulations, but did not satisfy the criteria for the Mental Retardation Listing at 12.05(B) (requiring an IQ score of 59 or less) or 12.05(C) (requiring an IQ score of 60 through 70 and "a physical or other mental impairment imposing an additional and significant work-related limitation of function").  The court noted that, in light of evidence indicating the claimant scored "as low as 41" on IQ testing, the ALJ's finding of a severe speech impediment "[i]mplicitly" satisfied the Listing criteria, and the court remanded the case for reconsideration and further development of the record.  *Id*. at 202.

By contrast, in this case the ALJ's analysis at step three of the evaluation process was focused on the criteria for Listing12.04 (Affective Disorders), and the court's review of the medical evidence indicates little support for plaintiff's argument that a consideration

of the impact of her stutter in combination with her other impairments would have altered the ALJ's analysis in any way.  For example, medical records indicate that plaintiff was treated at Erie County Medical Center ("ECMC") in February and March 2010 for behavioral changes associated with her antidepressant medication (Zoloft).  On mental status examination, her speech displayed normal rate, rhythm, and volume, and was coherent, spontaneous, and fluent, with an occasional "stress-related" stutter (Tr. 385).  Similarly, treatment records from Horizon Health Services indicate that upon initial psychiatric assessment in March 2010, plaintiff reported stuttering as a symptom of her recent initiation on Zoloft, but on mental status examination her speech was noted to be "clear and coherent" (Tr. 470).  On follow-up evaluation in September 2010, plaintiff reported that "she is getting better, there is no crying or tearfulness, no stuttering …" (Tr. 462), and on February 2001, her speech was reported as "mostly clear other than one episode of stuttering and one of speaking to herself under her breath" (Tr. 468).

In addition, in finding that plaintiff had moderate difficulties in concentration, persistence or pace under § 12.04(B)(3), ALJ Chin referred to Horizon treatment records indicating that plaintiff "repeats questions under her breath as if to let the question 'sink in' before answering" (*see* Tr. 34), and noted that during the hearing, plaintiff spoke at times "with what appeared to be a significant stutter" and "testified that stuttering usually occurs throughout the day, every day" (Tr. 36).  Based on these references, and in light of the scant medical evidence of a speech impediment having more than a minimal effect on plaintiff's physical or mental ability to do basic work activities as discussed above, *see* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work

activities."), any error assessed to the ALJ's failure to consider the impact of plaintiff's stutter at step three of the sequential analysis, or to incorporate any limitations from the stutter into his assessment of plaintiff's RFC, must be considered harmless.

Finally, plaintiff claims that the ALJ otherwise failed to properly assess plaintiff's mental RFC.  In this regard, the Regulations provide as a general matter that:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c).  The Social Security Administration Rulings provide further guidance for adjudicators to follow in making the mental RFC determination.  For example, SSR 96-8p discusses the requirements for assessment of mental RFC at steps four and five of the sequential evaluation process "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF [Psychiatric Review Technique Form]."   SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. 1996).   "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."   *Id.* at *6.

Upon review of the ALJ's RFC assessment in this case, the court finds adequate compliance with this guidance.  The ALJ's decision reflects a comprehensive evaluation of plaintiff's limitations in terms of the criteria for Listing 12.04, and her ability to  perform

work-related mental activities despite these limitations.  As indicated, the ALJ assigned "great weight" to the findings and opinions of Dr. Hill, who found plaintiff to be cooperative with an adequate manner of relating; her appearance was appropriate; her speech was fluent and clear; her thought process was coherent and goal directed, with no evidence of hallucinations, delusions, or paranoia; her affect was full range and appropriate in speech and thought content, and "somewhat dysphoric" (Tr. 305); her mood was "somewhat dysthymic to neutral and pleasant" (*id*); her sensorium was clear; she was oriented to person, place and time; her attention, concentration, and memory skills were all intact; her cognitive functioning was in the low average range; and insight and judgment were "fair to good" (*id.*).  In Dr. Hill's opinion, plaintiff was able to follow simple instructions; perform "some simple tasks independently under supervision" (Tr. 306); maintain "some attention and concentration" (*id.*); maintain a regular schedule; make "some appropriate decisions" (*id.*); relate generally adequately with others; and deal with "some stress" (*id.*).

Plaintiff claims that the weight accorded to Dr. Hill's opinion was improper because the opinion is excessively vague.  However, considered in its entirety, the information contained in Dr. Hill's report reflects a comprehensive evaluation of plaintiff's psychiatric, medical, and substance abuse history; her current mental functioning; and the results of a complete mental status examination.  Read in the context of this evaluation, the limitations expressed by Dr. Hill in his medical source statement are sufficiently clear to provide a basis for strong deference to his opinions on plaintiff's ability to carry out work-related activities.  As discussed, the ALJ's determination that plaintiff has the mental RFC for light work with certain exertional and nonexertional limitations was based on a thorough examination of the evidence in the record as a whole, including the information in Dr. Hill's

consultative examination report and opinion, the medical records from Horizon and ECMC, and plaintiff's testimony and statements of record regarding her activities of daily living.

Based on this analysis, the court finds that the ALJ's evaluation of the facts in this case was performed in light of the correct legal standards, and his decision is supported by substantial evidence.  Accordingly, the Commissioner's determination must be upheld.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 13) is denied, the Commissioner's motion for judgment on the pleadings (Item 21) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:    July 9, 2014
p:\pending\2013\13-326.ssa.july2.2014

-15-